```
          IN THE UNITED STATES DISTRICT COURT
        FOR THE NORTHERN DISTRICT OF WEST VIRGINIA
```

**TRANSAMERICA LIFE INSURANCE**
**COMPANY,**

      **Plaintiff,**

v.                  //    CIVIL ACTION NO. 1:12CV87
                                  (Judge Keeley)

**NINA B. CURKENDALL, SAMUEL E.**
**WRIGHT and MICHAEL H. SIMMONS,**

      **Defendants.**

**MEMORANDUM OPINION AND ORDER GRANTING NINA B. CURKENDALL'S**
**MOTION FOR SUMMARY JUDGMENT [DKT. NO. 42]**

Pending before the Court is Nina B. Curkendall's motion for summary judgment, (dkt. no. 42), which is fully briefed and ripe for review. For the reasons stated at the December 21, 2012 hearing and discussed below, the Court **GRANTS** her motion and **FINDS** that she is entitled to the insurance proceeds at issue in this case.

## I.

TransAmerica Life Insurance Co. ("TransAmerica") initiated this interpleader action against Nina B. Curkendall ("Mrs. Curkendall"), Samuel E. Wright ("Wright"), and Michael H. Simmons ("Simmons") to determine the proper beneficiary of a life insurance policy ("the Policy") it had issued to Charles R. Curkendall ("Mr. Curkendall") prior to his death. Both Mrs. Curkendall, the decedent's wife, and Simmons, his former business partner, allege

that they are the sole beneficiary of the policy proceeds.[1] The relevant facts, as detailed below, are undisputed.

Mr. Curkendall originally purchased the Policy from TransAmerica's predecessor on June 7, 1990, naming his wife as the sole beneficiary. Approximately one year later, on July 2, 1991, he changed the beneficiaries of the Policy to Wright (50%) and Simmons (50%), who were then his partners in a general business partnership. Thereafter, on July 12, 1997, Mr. Curkendall, Wright, and Simmons entered into a "buy-sell" agreement that was funded by the proceeds of their individual life insurance policies. The partnership disassociated a few years later, when Simmons, in a series of agreements executed between 2000 and 2001, purchased all of Mr. Curkendall and Wright's partnership interests. As a part of this buyout, the partners' life insurance policies were released from the "buy-sell" agreement, and the ownership of each policy was transferred back to the individual insureds.

As the buyout came to a close, the three former partners contacted William Pell ("Pell"), an authorized insurance agent for

---

[1] Wright, the third defendant, has not appeared in this case or otherwise made a claim under the Policy. On October 1, 2012, the Clerk entered default against him pursuant to Fed. R. Civ. P. 55(a).

2

the company now known as TransAmerica, for assistance in changing the ownership of their individual life insurance policies and in designating their new beneficiaries. Pell, in turn, provided each partner with the standard "Change of Beneficiary" form. Mr. Curkendall executed that form before three witnesses on January 5, 2001, naming his wife, Mrs. Curkendall, as the primary beneficiary under the Policy, and naming their three children, Terri, Charles, and Rachel, as contingent beneficiaries. Pell then collected the executed form from Mr. Curkendall and, in accordance with his customary practice, mailed it to the attention of a TransAmerica employee. The buyout thus finalized, Mr. Curkendall had no further involvement, business or personal, with Simmons.

On May 11, 2001, approximately four months after he executed the Change of Beneficiary Form, Mr. Curkendall executed and delivered a form to TransAmerica's predecessor that terminated his premium payments and reduced the face value of his life insurance to $395,000. In a responsive letter dated May 23, 2001, a TransAmerica employee wrote Mr. Curkendall to confirm this change. The letter also stated that:

> You may recall you had entered into a buy-sell agreement with your partners in 1998 and at that time the beneficiary for your contract was changed to Mr. Simmons and Mr. Wright. I

> have enclosed a change of beneficiary form
> should you need to make a change at this time.

(Dkt. No. 43 at 12). Neither the Curkendalls nor TransAmerica took any further action.

More than ten years later, on January 23, 2012, Mr. Curkendall passed away. That same month, Mrs. Curkendall, his widow and executrix, notified TransAmerica of her claim to the benefits due under the Policy. When several weeks went by without any response, she grew concerned and contacted Pell. He quickly discovered the problem: TransAmerica did not have the January 5, 2001, change of beneficiary form in its files, and as such, Wright and Simmons were still listed in its records as the co-beneficiaries of the Policy. Pell immediately advised TransAmerica of its mistake, and on February 24, 2012, he delivered the January 5, 2001, change of beneficiary form to TransAmerica via facsimile.

In early March of 2012, a TransAmerica employee contacted Simmons and Wright and informed them that they were still listed as the beneficiaries of record. Noting that a Change of Beneficiary Form may have been sent, but not received, on January 5, 2001, the employee asked Simmons and Wright if they would be willing to disclaim the proceeds of the Policy so that TransAmerica could disburse the benefits to Mrs. Curkendall. Wright agreed, and he

4

executed a written disclaimer of benefits on March 19, 2012. Simmons, however, filed a claim with TransAmerica on April 22, 2012, alleging that he is the sole beneficiary under the Policy and is thus entitled to the full amount of the insurance proceeds.

**II.**

**A.**

Summary judgment is appropriate where the "depositions, documents, electronically stored information, affidavits or declarations, stipulations . . ., admissions, interrogatory answers, or other materials" establish that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed R. Civ. P. 56(c)(1)(A), (a). When ruling on a motion for summary judgment, the Court reviews all the evidence "in the light most favorable" to the nonmoving party. Providence Square Assocs., L.L.C. v. G.D.F., Inc., 211 F.3d 846, 850 (4th Cir. 2000). The Court must avoid weighing the evidence or determining the truth and limit its inquiry solely to a determination of whether genuine issues of triable fact exist. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986).

The moving party bears the initial burden of informing the Court of the basis for the motion and of establishing the

nonexistence of genuine issues of fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). Once the moving party has made the necessary showing, the nonmoving party "must set forth specific facts showing that there is a genuine issue for trial." Anderson, 477 U.S. at 256 (internal quotation marks and citation omitted). The "mere existence of a scintilla of evidence" favoring the nonmoving party will not prevent the entry of summary judgment; the evidence must be such that a rational trier of fact could reasonably find for the nonmoving party. Id. at 248-52.

**B.**

The right to change the beneficiary of an insurance policy, like all other contractual rights, "depends upon the terms of the contract between the insured and the insurer." Gill v. Provident Life & Acc. Ins. Co., 48 S.E.2d 165, 167 (W. Va. 1948). Consequently, as a general rule, "the mode prescribed in a life insurance policy for changing the beneficiary must be at least substantially followed." Union Mut. Life Ins. Co. v. Lindamood, 152 S.E. 321, 322-23 (W. Va. 1930). This question turns primarily on the activities of the insured, as his "substantial compliance with the conditions relating to a change of beneficiary is sufficient"

6

to effect his desired change. Id. at 323; see also Gill, 48 S.E.2d at 169. In other words,

> when the insured in a life insurance policy has done substantially all that is required of him to accomplish a change of beneficiary and the ministerial acts of the officers of the insurer are all that remain to be done, the change will be effective even though the formal details were not completed before the death of the insured.

Gill, 48 S.E.2d at 169. In short, then, "[w]hen it appears that the insured actually attempted to make a valid change of beneficiary[,] the courts will give effect to his intention." Provident Life & Acc. Ins. Co. v. Dotson, 93 F.Supp. 538, 541 (S.D. W. Va. 1950).

### III.

Mrs. Curkendall contends that she is entitled to the insurance proceeds because her husband complied with the change of beneficiary provision in the Policy when he executed the "Change of Beneficiary Form" on January 5, 2001, and provided it to TransAmerica's authorized agent, William Pell. Simmons argues that there is a genuine issue of material fact as to Mr. Curkendall's intent to effect that change because he "took no steps" after he received the May 23, 2001 letter from TransAmerica's employee indicating that it had not yet processed his form. (Dkt. No. 43 at 5).

**TRANSAMERICA LIFE INS. CO. v. CURKENDALL, ET AL.          1:12CV87**
**MEMORANDUM OPINION AND ORDER GRANTING NINA B. CURKENDALL'S
MOTION FOR SUMMARY JUDGMENT [DKT. NO. 42]**

The Policy itself provides that the owner of the benefits, i.e., Mr. Curkendall, can change his designated beneficiary "at any time." (Dkt. No. 3-1 at 34). The Policy's only requirement for such a change is that the owner "write to [TransAmerica] and notify [TransAmerica] of the change." Id. Notably, the Policy also provides that "[a]fter [TransAmerica] receives the change, it will be effective as of the date that the Owner signed the request, even if the insured Participant died in the meantime." Id.

Here, there is no question that Mr. Curkendall executed a Change of Beneficiary form on January 5, 2001, naming Mrs. Curkendall as the primary beneficiary under the Policy. It is further undisputed that he placed that form directly in the hands of TransAmerica's agent, and thus TransAmerica, on that same day. It is consequently clear beyond peradventure that, as a matter of law, he "at least substantially followed" the conditions of the Policy relating to a change of beneficiary. Lindamood, 152 S.E. at 322-23. Indeed, his role in the process concluded once he gave the form to Mr. Pell, and "all that remain[ed] to be done" were "the ministerial acts of the officers of the insurer." Gill, 48 S.E.2d at 169. His designation of Mrs. Curkendall as his primary beneficiary was thus effective as of January 5, 2001.

**TRANSAMERICA LIFE INS. CO. v. CURKENDALL, ET AL.**          **1:12CV87**

**MEMORANDUM OPINION AND ORDER GRANTING NINA B. CURKENDALL'S MOTION FOR SUMMARY JUDGMENT [DKT. NO. 42]**

The letter penned by a TransAmerica employee on May 23, 2001, upon which Simmons places so much emphasis, is entirely inconsequential. There is no question that Mr. Curkendall did not change the beneficiary of the Policy after January 5, 2001, and as such, any wildly speculative "intent" that Simmons attempts to claw from the May 23, 2001 letter is legally irrelevant. Furthermore, there is not one iota of evidence in the record that Mr. Curkendall ever "intended" to gift the benefits of his life insurance policy to Simmons, an estranged former business relation, instead of his wife and children.

**IV.**

For the reasons stated above, the Court:

1. **GRANTS** the defendant Nina B. Curkendall's motion for summary judgment (dkt. no. 42), **FINDS** that she is entitled to the full amount of the insurance proceeds under the Policy, and **DIRECTS** TransAmerica to pay her the full proceeds of Certificate No. G015341;

2. **DISMISSES** the defendant Michael H. Simmons's counterclaims against TransAmerica **WITH PREJUDICE**; and

3.    **ORDERS** the parties to file motions for attorney's fees and costs, if any, within **ten (10) days** of the entry of this Order.

It is so **ORDERED.**

The Court **DIRECTS** the Clerk of Court to transmit copies of this Order to counsel of record.

DATED: January 17, 2013.

                                         /s/ Irene M. Keeley  
                                         IRENE M. KEELEY  
                                         UNITED STATES DISTRICT JUDGE